IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN L. RYAN, | No. CIV S-03-2657-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 16).

///

///

///

///

# I. BACKGROUND

Plaintiff applied for disability insurance ("DI") benefits on April 26, 2000, based on disability. In her applications, plaintiff claims that her impairment began on October 5, 1999. Plaintiff claims her disability consists of a combination of knee pain, nervous mental breakdown, depression, confusion, nervousness, constant fatigue, and lupus. Plaintiff is a United States citizen born April 26, 1951, with a high school education.

Plaintiff's claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on December 5, 2001, before Administrative Law Judge ("ALJ") Mark C. Ramsey.

In his March 21, 2002, decision, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2004;

2. The claimant has not engaged in substantial gainful activity since October 5, 1999;

3. The claimant's history of knee pain, depression and anxiety disorders are "severe" within the meaning of the Act;

4. Considering all of the claimant's impairments, they fail to meet or medically equal in severity the appropriate medical findings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings");

5. The claimant retains the residual functional capacity to perform light exertion; the claimant can lift and carry up to 20 pounds occasionally, lift and carry up to 10 pounds frequently; the claimant does not have any restrictions with standing, walking, or driving; the claimant can bend, kneel, squat, climb, reach above her shoulders and perform repetitive tasks that do not involve the general public or more than occasional contact with peers or supervisors;

6. The claimant's allegations of disability, when considered pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Ruling 96-7p, the pertinent regulations, are not credible to the extent alleged and are rejected . . .;

7. The claimant is 50 years old with a 12th grade education;

///

8. The claimant has no transferable skills from any past relevant work and/or transferability skills are not an issue in this case;

9. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision making, there are a significant number of jobs in the national economy; and

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI benefits.

On November 18, 2002, the Appeals Counsel vacated the March 21, 2002, decision and remanded to the ALJ for further proceedings. In particular, the ALJ was directed to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base. Pursuant to this remand, a second hearing was held before the ALJ on January 16, 2003. In his May 17, 2003, supplemental decision, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act of October 5, 1999, the date the claimant stated she became unable to work, and continues to meet them through December 31, 2004;

2. The claimant has not engaged in substantial gainful activity since October 5, 1999;

3. The medical evidence established that the claimant has a severe anxiety disorder, depressive disorder, a substance abuse disorder in remission, and a history of knee pain, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in the Listings;

4. The claimant's allegations in regards to the degree of her pain and other symptoms are found to be not fully credible for the reason stated above;

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for the claimant is limited to performing simple unskilled work activity which requires only occasional contact with peers, supervisors and no contact with the public; the claimant is also limited to lifting and carrying 40 pounds occasionally with no other restrictions;

| | | |
|---|---|---|
| | 6. | The claimant is unable to perform any of her past relevant work; |
| | 7. | The claimant is 52 years old, which is defined as closely approaching advanced age; |
| | 8. | The claimant has a high school education; |
| | 9. | Based on an exertional capacity for less than a full range of medium and light unskilled work and the other restrictions noted above, given the claimant's age, education, and work experience, section 404.1569 and Rule 203.22 and 202.14, Table No. 2 and 3 Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled;" |
| | 10. | Although the claimant's additional nonexertional limitations do not allow her to perform the full range of medium or light work, using the above-cited rules as a framework for decision making, there are a significant number of jobs in the national economy which she could perform; examples of such jobs are: a small parts assembler which is located in the Dictionary of Occupational Titles at (DOT) 706.684-022; this job is light, has an SVP of 2; there are 700,000 jobs nationally; the claimant could also perform work as a can filling machine operator; this job is listed in the DOT at 529.685-285; this job is light and unskilled; there are 150,000 jobs available nationally; the claimant could also perform work as a packing line assembler; this job is located in the DOT at 753.687-038; this job requires light work and has an SVP of 2; there are 190,000 jobs available in the national economy; and |
| | 11. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. |

Based on these supplemental findings, the ALJ again concluded that plaintiff was not disabled. This decision became final when the Appeals Council denied review on October 28, 2003.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's

4

conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in two ways in determining that she was not disabled. Specifically, plaintiff argues: (1) the ALJ failed to issue a specific finding in each functional area (daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) based on all of the enumerated functional limitations, as required by 20 C.F.R. § 404.1520a; and (2) the ALJ failed to consider all of plaintiff's documented physical and mental limitations (in particular, her inability to maintain regular work attendance or deal with conventional work stressors) when posing hypothetical questions to the vocational expert.

### A. **Residual Functional Capacity Findings**

Plaintiff argues that the ALJ erred by not making a specific finding as to the degree of limitation in each of the functional areas delineated in the regulations. In particular, plaintiff seeks a remand for the ALJ to make the required specific findings as to the functional areas listed in 20 C.F.R. § 404.1520a(c), as required by § 404.1520a(e)(2). Based as it is on

§ 404.1520a, plaintiff's argument is a procedural one.  The issue before the court is whether the ALJ's decision contains the required findings.  If it does, plaintiff's argument must be rejected.

Section 404.1520a(e)(2) provides:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique [set forth elsewhere in the regulation].  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

In turn, paragraph (c) of § 404.1520a provides as follows:

> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.  We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.  Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.  (citation omitted).
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  (citation omitted).
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme.  When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more.  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Therefore, the regulations require that the ALJ's decision must include a specific finding as to each of the four functional areas of daily living, social functioning, concentration, and episodes

of decompensation.

In the May 17, 2003, supplemental decision, the ALJ outlined the significant history, including medical evidence, and the functional limitations that were considered. The ALJ then made the following specific findings:

> The undersigned also finds that in regards to the claimant's mental disorders, the claimant's disorders did not meet the B criteria in the listing in that the claimant has only moderate restriction of activity of daily living, moderate difficulties in maintaining social difficulties [sic], mild concentration [sic] in maintaining concentration, persistence or pace, with no evidence of repeated episodes of decompensation.

From this, it is clear that the ALJ found the following limitations:

| | |
|---|---|
| Daily Living | Moderate |
| Social Functioning | Moderate |
| Concentration, etc. | Mild |
| Discompensation | None |

The court is satisfied that this decision contains a sufficiently specific finding as to each of the four areas outlined in the regulations.

**B.**     **Hypothetical Questions**

Plaintiff next argues that the ALJ failed to consider all of her documented physical and mental limitations when posing hypothetical questions to the vocational expert. Specifically, plaintiff contends that the ALJ did not consider her severe anxiety and depression. In essence, plaintiff argues that, because the hypothetical questions were not properly posed by the ALJ, the vocational expert's testimony cannot constitute substantial evidence of non-disability.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform

has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At the second hearing, the ALJ posed the following hypotheticals to the vocational expert:

> Q: The first hypothetical is occasional contact with peers, supervisors and the public.  Would she be able to – and she can do up to 40 pounds.  No other restrictions.
>
> Q: How about the second hypothetical.  All – hypotheticals all the same except she would have no contact with the public.
>
> Q: She has residual functional capacity for light level work activity.  The claimant can lift and carry – I'm reading from page five of my prior Decision.  Claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can sit and stand six out of an eight.  No restrictions on sit and stand.  The claimant would not be able to do any pushing or pulling with her left wrist.  Those are the only restrictions on the left arm.
>
> Q: Okay.  And if – and I take it if she would be unable to maintain regular attendance in the workplace due to extreme anxiety and continuing depression then I take it all of these jobs would be eliminated?
>
> Q: Okay.  And if she would be unable to complete a normal workday or workweek without interruptions from her psychiatric condition I take it that would eliminate – all jobs?
>
> Q: Okay.  And if she was unable to deal with the usual stressors in a competitive work pace would that eliminate all jobs?

Here, the ALJ posed a set of alternative hypothetical questions based on various interpretations of the evidence of plaintiff's mental limitations.  In the first set of questions, the ALJ explored the jobs available assuming no limitations due to anxiety and/or depression.  Then, the ALJ considered the same jobs in light of mental limitations.  The question, then, is whether the hypotheticals which assume no mental limitations are supported by the record.  In other words, is

1  the ALJ's conclusion that plaintiff has no mental limitations on work supported by the record as

2  a whole?

3        Having reviewed the entire record, the court agrees with the ALJ's summary of

4  the medical evidence as to plaintiff's mental condition:

> In regards to the claimant's psychiatric impairments, the medical records show that the claimant developed an anxiety and depressive disorder when she was terminated from her last job after drug screening showed that she tested positive for drugs. The undersigned has reviewed all of the records, and finds credible the claimant's testimony that she is not a regular drug user and she does not suffer from severe substance abuse disorder. Although the claimant has occasionally used drugs, this does not appear to be a sever impairment.
>
> Similarly, while the record documents that the claimant has had a past history of alcohol abuse, the record documents that this has not been an impairment since her alleged onset date. Therefore, the undersigned does not find evidence of a current severe substance disorder.
>
> However, the record document that the claimant has been receiving medications for anxiety and depression from her treating physician, Dr. Monigatti-Lake. However, the undersigned does not find credible the claimant's allegation that she is unable to sustain the requirements of even unskilled work secondary to either anxiety or depression. In making this determination, the undersigned notes that Dr. Randawa, a consultative psychiatric examiner who examined the claimant in May of 2000, opined to restrictions which would preclude the claimant from being able to perform work. Specifically, Dr. Randawa found that the claimant would have difficulty working with the public due to anxiety, would have difficulty maintaining regular attendance in the workplace due to anxiety and depression and due to interruptions from her psychiatric conditions.
>
> The undersigned will not give full weight to Dr. Randawa's assessment because it appears it is based more upon the claimant's subjective complaints which are not fully supported in the record. The undersigned has reviewed in detail the claimant's records from her treating source, Dr. Monigatti-Lake, and while this physician has noted ongoing symptoms of anxiety and depressive symptoms, the claimant has not complained to the same degree of symptoms as reported to Dr. Randawa. When first treated, it appears that the claimant was having more severe anxiety symptoms. However, after she began taking medications, treatment records document improvement in her symptoms with the claimant reporting on only two to three occasions that she was experiencing only occasional panic attacks. Additionally, while the panic attacks are usually triggered with increased social activities the treating records do not support a finding that the claimant has developed a significant agoraphobic disorder as noted in the most recent assessment made at Nevada County Mental Health. The diagnosis of major depression with agoraphobia recently made was also

> based upon the claimant's subjective complaints. However, given a review of her treating records, the undersigned finds that the claimant's complaints cannot be fully relied upon and therefore, only partial weight has been given to Dr. Randawa's report and to the most recent assessment at the Nevada County Mental Health.
>
> Reviewing the longitudinal treatment records and the above two reports as well as the remaining records, the undersigned finds that the record supports a determination that the claimant has been limited as a result of a severe anxiety and depressive disorder since her alleged onset date. However, the limitations resulting from this impairment are restrictions to unskilled work with an additional restriction that the claimant can perform only occasional contact with peers, and supervisors, and no contact with the public. With these restrictions, the claimant's symptoms are significantly reduced and the claimant should be able to work with little or no anxiety. This finding is also consistent with the opinion of the State Disability Determination physician who reviewed the record in October 2000.

Based on the above discussion, the court concludes that the ALJ's determination that plaintiff has no mental limitations is supported by substantial evidence in the record as a whole. As the ALJ noted, Dr. Randawa's conclusion to the contrary is somewhat undercut by other objective evidence which supports the ALJ's conclusion.

      It is clear here that the ALJ considered all of plaintiff's limitations, including, mental, to the extent supported by the record, in posing hypothetical questions to the vocational expert. The ALJ directly asked whether all jobs would be eliminated if plaintiff could not maintain regular attendance or complete a normal work day or work week due to interruptions from psychiatric conditions. Therefore, even assuming that the ALJ later erred in giving less weight to the medical opinions supporting plaintiff's complaints, the ALJ's hypotheticals took into account the full range of plaintiff's limitations, including her anxiety and depression. Plaintiff's argument that the hypotheticals failed to give proper consideration to her anxiety and depression is unpersuasive.

///

///

///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:   January 11, 2006.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE